| | |
|---|---|
| **Tamita R. Morgan,** Plaintiff, v. **Carolyn Colvin**, Acting Commissioner of Social Security, Defendant. | **Memorandum & Recommendation** |

Plaintiff Tamita R. Morgan instituted this action on July 8, 2015, to challenge the denial of her application for social security income. Morgan claims that Administrative Law Judge Katherine D. Wisz erred in her evaluation of the medical opinion evidence and in determining her residual functional capacity ("RFC"). Both Morgan and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 25, 31.

After reviewing the parties' arguments, the court has determined that ALJ Wisz erred in her determination. ALJ Wisz erred in failing to properly weigh all the medical opinions and in failing to explain how some of Morgan's severe impairments impact her functional abilities. Therefore, the undersigned magistrate judge recommends that the court grant Morgan's motion, deny Colvin's motion, and remand the matter for further consideration.[1]

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.     Background**

On September 22, 2011, Morgan filed an application for disability insurance benefits. On October 31, 2011, she filed an application for supplemental security income. Both applications alleged a disability that began on February 28, 2009. After her claims were denied at the initial level and upon reconsideration, Morgan appeared before ALJ Wisz for a hearing to determine whether she was entitled to benefits. ALJ Wisz determined Morgan was not entitled to benefits because she was not disabled. Tr. at 17–27.

ALJ Wisz found that Morgan had the following severe impairments: degenerative disc disease; migraines; obesity; visual problems; and organic brain syndrome. *Id*. at 19. ALJ Wisz also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Wisz then determined that Morgan had the RFC to perform a light work with the following limitations: she can occasionally push and pull foot controls with the lower extremities; she can occasionally climb ramps and stairs but not climb ladders, ropes, or scaffolds; far acuity can only be performed occasionally as her left far acuity vision is limited to 20/200; she can perform work with occasional exposure to hazards, such as unprotected heights and moving machinery; she is able to remember and carry out short instructions; and she can occasionally interact with co-workers and supervisors. *Id*. at 21.  ALJ Wisz also concluded that Morgan was incapable of performing her past work but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id*. at 26–27. These include warehouse checker, mail clerk, and office helper. *Id*. at 26. Thus, ALJ Wisz found that Morgan was not disabled. *Id*. at 27.

After unsuccessfully seeking review by the Appeals Council, Morgan commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on July 8, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

3

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

In 2009, Morgan suffered a back injury while employed as a home health care worker. Tr at 24–25. She subsequently developed left-sided pain and weakness as well as vision problems with her left eye. *Id*. at 24, 1018–23, 1026–30. By 2011, Morgan was experiencing increased episodes of facial numbness. *Id*. at 24. An MRI had normal results, and providers opined that Morgan had migraines with neurological involvement. *Id*. at 965–66. Morgan received in-patient treatment in July 2011 and again in August 2011 for left-sided hemiparesis. *Id*. at 22, 294–97, 961–63.

Morgan's continued to experience left-sided paralysis along with dysarthria and memory deficits. *Id*. at 372, 381. Morgan's history of trauma, stress, optic neuropathy, and coping issues led providers to believe that she suffered from conversion syndrome. *Id*. at 405.

In December 2011, consultative examiner Dr. Christopher Ricci performed a psychological examination. *Id*. at 427–29. He opined that Morgan was capable of maintaining attention and concentration but that she had difficulty with memory functioning. *Id*. at 429. He further opined that she may have difficulty maintaining a regular schedule and in dealing with stress. *Id*.

In January 2012, Duke Neurology noted that the etiology of Morgan's weakness had not been identified, despite numerous diagnostic tests. *Id*. at 434. Given her psychological stressors, providers suspected that she suffered from conversion disorder. *Id*. Later that month, her primary care provider, Dr. Constant Masere of Rural Health Group, prescribed a cane due to her

4

persistent weakness. *Id*. at 443. This provider had also prescribed home health care to assist Morgan with bathing and dressing. *Id*. at 544.

Morgan received treatment from Dr. Andrew Newcomb of Family Eye Center in March 2012. *Id*. at 1002. He found that she had intact right eye vision but only light perception in her left eye. *Id*. Raleigh Neurology assessed left optic neuropathy later that month. *Id*. at 919–21. A nerve conduction study of the lower extremities ruled out peripheral neuropathy but indicated patterns consistent with suprasegmental process in her left leg. *Id*. at 931.

Dr. Melissa Daluvoy performed a consultative visual examination on May 22, 2012. *Id*. at 468–70. She assessed 20/100 visual acuity in the left eye and observed afferent pupillary defect in that eye. *Id*. at 468. She diagnosed visual field defect, left eye optic atrophy and nerve damage, and right eye glaucoma. *Id*. at 470. Dr. Daluvoy noted that the damage to Morgan's left eye would affect her peripheral and central vision in that eye. *Id*.

In June 2012, Morgan reported that she regularly felt off-balance and that she suffered daily migraine headaches. *Id*. at 911. A lumbar spine MRI showed some small disc protrusion and early desiccation. *Id*. at 916. In August 2012, Morgan continued her complaints of imbalanced gait and migraines. *Id*. at 885. Dr. Munther Tabet, a neurologist at Vance Family Medicine, examined Morgan that month. *Id*. at 954. His examination observed a gait with limp, weaker left leg, and decreased sensation in both feet. *Id*. at 956. He also diagnosed her with multiple sclerosis ("MS").[2] *Id*.

Dr. Silva Markovic-Plese of UNC Hospitals saw Morgan in September 2012. *Id*. at 862. Morgan demonstrated give-way weakness and instability when walking. *Id*. Dr. Markovic-Plese subsequently completed a Medical Source Statement noting that Morgan suffered from ataxia, weakness, stiffness, sustained disturbance of gait and station, and significant reproducible fatigue

---

[2] A review of the record suggests that this diagnosis was suspected but not confirmed.

5

of motor function with substantial muscle weakness on repetitive activity. *Id*. at 860. Dr. Markovic-Plese opined that Morgan could not work due to these neurological symptoms. *Id*.

Morgan continued to receive treatment from Dr. Tabet for migraines, muscle weakness, and suspected MS. *Id*. at 949–51. Her left leg weakness and limp were again noted in December 2012. *Id*. Additionally, a January 2013 MRI confirmed atrophy of the left optic nerve. *Id*. at 1190. Later that month, Dr. Newcomb assessed Morgan's left eye visual acuity to be 20/200. *Id*. at 1125.

Providers at Vance Family Medicine treated Morgan in January 2013 for her neural deficits, including incontinence with daily self-catheterization, left eye vision loss, and left leg weakness. *Id.* at 1117. She presented with a limp and reported difficulty with activities of daily living. *Id*. Due to the progression of her neural deficits, her provider agreed that Morgan needed home health aid. *Id*. at 1118. The following month, Morgan reported that her left side felt heavy and that she experienced migraines several days per month, each lasting for several days. *Id*. at 1115. Dr. Tabet assessed MS and lumbar radiculopathy. *Id*. at 1185–87.

In February 2013, Vance Family Medicine Providers prescribed a walking boot for Morgan's left leg weakness. *Id.* at 1114. The following month, Morgan returned to Dr. Markovic-Plese, who noted recurrent optic neuritis and left foot weakness. *Id*. at 1178–79. She continued to receive home health care. *Id*. at 1156. Physical therapists evaluated Morgan and noted loss of strength on both legs with left foot drop. *Id*. at 1159. They concluded that Morgan's major functional limitations were an inability to walk without an assistive device and an inability to perform activities of daily living that required lumbar flexation. *Id*.

Dr. Steven Winters of Triangle Orthopedic Associates saw Morgan in June 2013. *Id*. at 1198–1203. He prescribed a brace for her left leg. *Id*. at 1202. Later that month, Dr. Winters

observed Morgan walking with a walker for foot drop. *Id*. at 1198–99. She reported low back and left hip pain. *Id*.

  D.  **Medical Opinion Evidence**

Morgan argues that ALJ Wisz erred in her consideration of the medical opinion evidence. The Commissioner asserts that ALJ Wisz properly considered this evidence. The court finds that ALJ Wisz erred in failing to properly weigh all of the medical opinions.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05–CV–46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96–6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however,

7

"the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id*. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id*. § 404.1527(d)(4).

Morgan contends that ALJ Wisz failed to weigh the opinion of Dr. Silva Markovic-Plese. ALJ Wisz discussed Dr. Markovic-Plese's treatment notes. Tr. at 23. However, the Commissioner concedes that ALJ Wisz did not weigh the September 2012 questionnaire submitted by Dr. Markovic-Plese. *Id*. at 860.

As noted above, the Regulations require an ALJ to evaluate every medical opinion. 20 C.F.R. § 404.1527(c), "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love–Moore v. Colvin*, No. 7:12–CV–104–D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No.

5–11–CV–648–D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (citations and quotations omitted). An ALJ's failure to expressly state the weight given to a medical opinion may also be harmless error when the opinion is consistent with the ALJ's RFC determination." *Davis v. Colvin*, No. 12–2244–CMC–BM, 2014 WL 172513, at *2 (D.S.C. Jan. 15, 2014) citing *Morgan v. Barnhart*, 142 F. App'x 716, 722–23 (4th Cir. 2005) (holding that any error in failing to credit a medical opinion was harmless where the ALJ incorporated results of functional capacity exam, which was consistent with medical opinion, into plaintiff's RFC); *Rivera v. Colvin*, No. 5:11–CV569–FL, 2013 WL 2433515 (E.D.N.C. June 4, 2013) ("ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination."). *See also Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (when medical evidence does not conflict with the ALJ's opinion, "the need for express analysis is weakened.").

Among other things, Dr. Markovic-Plese concluded that Morgan could not use either arm, she could not stand at all during the workday, and she could not work for even one hour. *Id*. The Commissioner argues that this opinion is entitled to no weight because it conflicts with Dr. Markovic-Plese's treatment records which noted negative diagnostic findings and no invasive treatment. She contends that ALJ Wisz's oversight constitutes harmless error not only because ALJ Wisz discussed the evidence but also because the totality of the record did not support Dr. Markovic-Plese's findings.

The court finds Morgan's argument persuasive. While it may be entirely proper to discount Dr. Markovic-Plese's assessment based on a lack of support from the objective medical evidence of record, it is not the role of this court to weigh the evidence or supply a rationale for rejecting an opinion. *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must ...

9

affirm the ALJ's decision only upon the reasons he gave"). Moreover, given that Dr. Markovic-Plese's assessment is contrary to ALJ Wisz's RFC determination, the court is unable to conclude that any failure to weigh that opinion is harmless error. *See Davis*, 2014 WL 172513, at *2. Accordingly, this issue warrants remand.

Morgan also argues that ALJ Wisz gave great weight to the opinion of Dr. Daluvoy but failed to adopt all the visual limitations she set forth. Morgan contends that her left eye is constantly limited, that she can not even use her left eye occasionally due to optic nerve damage, and that her peripheral vision is hampered. Tr. at 467–72. Morgan contends that the ALJ Wisz did not explain why these limitations were excluded from the RFC, which only limited her to occasional far acuity. *Id.* at 21.

It is well-settled that in according significant weight to a medical opinion, an ALJ is not bound to accept or adopt all the limitations set forth therein. *See Bennett v. Colvin,* No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (holding that ALJ who accords great weight to opinion not required to adopt that opinion wholesale); *Razey v. Colvin*, No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (ruling that ALJ not required to adopt a medical opinion wholesale); *Lambert–Newsome v. Astrue*, No. 11-1141-CJP, 2012 WL 2922717, at * 6 (S.D. Ill. July 17, 2012) (noting that merely because ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin v. Astrue*, No. EDCV 11-23-AJW, 2012 WL 870845, at * 2–3 (C.D. Cal. March 14, 2012) (finding that, although ALJ gave great weight to medical source opinion, he did not err in implicitly rejecting one limitation from that opinion); *Armentrout v. Astrue*, No. 3:10-cv-504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted*

10

*by,* 2011 WL 4625912 (E.D. Va. Oct. 3, 2011). Recently, however, the Fourth Circuit reiterated the determination that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review" remand may be appropriate. *Monroe v. Colvin*, -- F.3d --, No. 15-1098, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)).

Here, ALJ Wisz concluded that Dr. Daluvoy's findings were consistent with the record as a whole and related to her specialty. Tr. at 25. Her evaluation could be read to include additional limitations, such as restrictions that address her lack of peripheral vision. Although the functional ability of Morgan's left eye may not require additional restrictions in the RFC, the court cannot review ALJ Wisz's determination in a meaningful way without further explanation of why her left eye impairments did not translate into additional functional restrictions, such as avoidance of all workplace hazards. It may be the case that Morgan's left eye vision does not require further limitations. However, that is the role of the fact-finder to make this determination and explain it. Accordingly, remand for further consideration of the limitations stemming from Morgan's left eye vision is necessary.

Morgan next contends that ALJ Wisz erred in considering the opinion of Dr. Ricci. ALJ Wisz gave great weight to Dr. Ricci's assessment, finding that it was consistent with the entire record and addressed functions within his specialty. *Id*. at 25, 426–29. ALJ Wisz noted that Dr. Ricci found that Morgan was able to maintain concentration and attention. *Id*. at 24. Morgan contends that ALJ Wisz failed to adopt Dr. Ricci's conclusion that she may have difficulty maintaining a schedule and in dealing with stress.

The Commissioner maintains that ALJ Wisz's RFC finding addressed Morgan's mental limitations. The RFC limited Morgan to understanding, remembering, and carry out short instructions and only occasional interactions with co-workers and supervisors. Tr. at 21. As noted above, an ALJ is not required to incorporate every limitation assessed in a medical opinion that is given significant weight. Here, Dr. Ricci did not find that Morgan had difficulty in her abilities to handle stress and to maintain a regular schedule, but that she *may* have such difficulties. *Id*. at 429 (emphasis added). Not only is such a limitation uncertain, but Morgan does not identify nor offer support for what additional restrictions would arise from a finding that she had such deficiencies in these functional areas. Accordingly, ALJ Wisz did not err in evaluating Dr. Ricci's opinion.

In sum, ALJ Wisz erred in her consideration of Drs. Markovi-Plese's and Daluvoy's opinion, but she properly evaluated Dr. Ricci's opinion. Because further consideration of Drs. Markovic-Plese's and Daluvoy's opinions is necessary, remand is appropriate.

### E. Residual Functional Capacity

Morgan also contends that ALJ Wisz's RFC determination is flawed because she failed to conduct a function-by-function assessment, failed to address the limitations stemming from her migraines, and failed to consider her limited ability to walk as she used both a cane and a wheelchair. The Commissioner asserts that ALJ Wisz properly evaluated the evidence and assessed Morgan's RFC. The court finds, however, that ALJ Wisz's RFC determination failed to address the limitations, if any, arising from Morgan's severe impairments and also failed to create a logical bridge between the evidence and her functional limitations.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is

the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Social Security Ruling 96-8p explains how the Commissioner assesses RFC. *See* SSR 96-8p. "The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio*, 780 F.3d at 636 (quotation omitted). "Only after that may [RFC] be expressed in terms of the exertional levels of work [:] sedentary, light, medium, heavy, and very heavy." *Id.*(quoting SSR 96-8p). Ruling 96-8p also requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p).

The Fourth Circuit's recent decision in *Monroe* is instructive on this issue. 2016 WL 3349355. The Court of Appeals remarked that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual

may be able to do.'" 2016 WL 3349355, at *9 (quoting *Mascio*, 780 F.3d at at 636) (citation omitted). The *Monroe* Court concluded that the ALJ made such an error. *Id*. It observed that the ALJ found that Monroe's sleep apnea and narcolepsy were severe impairments, but made no specific findings about whether these conditions "would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur." *Id*. Instead, the ALJ simply concluded that Monroe was capable of a reduced range of light work and that his claimed symptoms were not credible to the extent they were inconsistent with the RFC. *Id*. Remand was warranted given the contradictory evidence in the record.[3]

Here, ALJ Wisz found that Morgan's migraines were a severe impairment at step two. Tr. at 19. Morgan testified that the migraines happen frequently, sometimes daily. *Id*. at 43–44. She stated that this condition causes blurry vision, makes her intolerant to light or sound, and requires her to lie down for three to four hours. *Id*. at 44. The medical record documents this condition. *See id*. at 949–51, 1185–87. ALJ Wisz did not explain why Morgan's statements regarding her migraines were not credible. The Commissioner asserts that ALJ Wisz found Morgan's only partly credible because testing was negative and because there were inconclusive neurological examination. *Id.* at 25. However, this reasoning addressed Morgan's left-side weakness, not her migraines. *Id*. In light of *Monroe*, ALJ Wisz's failure to explain how Morgan's migraines and their resulting symptoms impact her RFC makes remand appropriate.

---

[3] The Fourth Circuit also determined that the ALJ failed to satisfactorily explain his decision to partly discredit the claimant's allegations. *Monroe*, 2016 WL 3349355, at *11. The court observed that the ALJ failed to indicate how the facts he cited discredit claimant's allegations that he would lose consciousness two or three times daily and suffered extreme fatigue. *Id*. Remand was appropriate because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion that [claimant's] testimony was not credible." *Id*. at *10 (citation omitted).

Morgan also asserts that the RFC fails to account for her limited mobility due to her use of a boot, a cane, and wheelchair. ALJ Wisz's decision notes that providers at Rural Health Care prescribed the boot, and that Triangle Orthopedics prescribed the wheelchair and the cane. *Id.* at 24. However, she does not explain what effect, if any, these devices have on Morgan's ability to perform work activity. Given her testimony that she could only stand for a few minutes and walk 15–20 minutes with the cane, *id.* at 49, along with her well-documented left-side, lower extremity weakness, ALJ Wisz erred by failing to explain, with citations to the evidence, why she did not credit these allegations. Accordingly, this issue warrants remand.

## III. Conclusion

For the forgoing reasons, the court recommends that the court grant Morgan's Motion for Judgment on the Pleadings (D.E. 25), deny Colvin's Motion for Judgment on the Pleadings (D.E. 31), and remand the matter for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: July 21, 2016

*Robert T. Numbers II*
_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE